STRANSKY v. HARRIS.

SAME v. WEICHMAN.

(Supreme Court, Appellate Term. February 28, 1898.)

1. BAIL—JUDGMENT AGAINST SURETIES—SECURED EXECUTION.
 Where, in an action in which an order of arrest has been granted, and defendant has been released on bail, judgment is thereafter secured, and, after the return of execution against his body with the statement "Not found," an action is begun, and judgment by default entered against his sureties, the court cannot, at the instance of the sureties, direct the plaintiff to issue a new execution against the body of the original defendant. The method provided for the exoneration of sureties is by surrender of the defendant. The issuing of a further execution concerns the plaintiff solely, and with it they have no concern.

2. PLEADING—AMENDED ANSWER.
 The court has no power to give general authority to a defendant to serve an amended or supplemental pleading setting up any new matters that may thereafter occur in the action up to the time when he may see fit to avail himself of the privilege.

3. APPEAL—OPENING DEFAULT.
 While the question whether a default should be opened is a matter with respect to which a very broad discretion exists in the court of original jurisdiction, yet a direction opening a default, and other provisions in the same order which are plainly erroneous, may be so far interdependent as to require a reversal of the entire order.

Appeal from city court of New York, general term.

Actions by Maurice Stransky against Abraham Harris and Nathan Weichman. From an order of the general term (48 N. Y. Supp. 623) affirming an order by the special term, plaintiff appeals. Reversed.

In the action first above mentioned, the plaintiff obtained an order of arrest against the defendant, who gave the required bail, and was discharged from custody. Thereafter such proceedings were had that judgment was recovered against the defendant; and after an execution had been duly issued against his property, and returned unsatisfied, an execution against his body was placed in the hands of the sheriff, who, after the lapse of 60 days, returned it unexecuted, with the statement, "Not found." Thereupon an action was begun by the plaintiff against the sureties on the bail piece, being the action secondly above mentioned. The defendant (respondent) answered, but, having made default when the case was called for trial, an inquest was taken, and judgment was entered against him. An execution was immediately issued, under which a levy was made by the sheriff on the property of the respondent. A motion was then made by him that his default be opened, which was granted on the payment of $15 costs, the court further directing that the judgment should stand as security, and setting the case down for trial on a specified date. The case appeared on the trial term calendar for that day, when the respondent endeavored to obtain an adjournment, in which, however, he was unsuccessful. It also appears that the $15 costs imposed as above stated had not been paid. The only official record of what took place on that occasion is found in the stenographer's minutes, where it is stated that the defendant, in open court, refused to comply with the order opening the default, and consented that the judgment already recovered should stand, and that the sheriff might proceed under the execution issued thereon. Subsequently, an agreement was entered into between the respondent Weichman and the plaintiff, in pursuance of which the execution was withdrawn, and payments were made from time to time by Weichman on account of the judgment, which has thus been reduced to about one-half of its original amount. After a lapse of five months from the recovery of the judgment, the respondent made a motion at a special term of the city court for the purpose of securing relief from the judgment, on which motion the order appealed from was made. By the terms of such order, the plaintiff was directed to issue a new execution against the body of the defendant Harris within three days after a service upon him of a copy of the order. It was then provided that the respondent should be permitted thereafter to surrender Harris to the sheriff, and his time to do so was extended three days after the issuing of such execution; that the respondent be permitted to serve an amended or supplemental answer within three days after such surrender, "setting forth such new matters as may have occurred in said action"; that the judgment on default taken against the respondent be opened on the payment to the plaintiff of $50 costs; that the cause be set down for trial on a specified date; and that the respondent have leave to apply to the court to exonerate him as surety on the bail piece. The ground on which the equity of the motion was placed is that the respondent was ignorant of the fact that he could have surrendered Harris, and thereupon have obtained an order of exoneration after the action on the undertaking had been commenced, and that he was the victim of his former attorney's ignorance or neglect. It was also further claimed that the plaintiff's attorney withheld the address of the defendant Harris from the sheriff, and thus prevented his being taken under the execution for the purpose of bringing an action on the undertaking, and collecting the judgment from the sureties.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Jesse S. Epstein, for appellant.
Charles I. Schampain, for respondents.

BEEKMAN, P. J. The court below erred in directing the plaintiff to issue a new execution against the person of the defendant Harris. The object of the direction was to lay a foundation for the

surrender of their principal by the sureties on the undertaking in their own exoneration. Such a surrender may be made before the expiration of the time to answer in an action on the undertaking, or afterwards, where the time to do so has been extended by the court. Code Civ. Proc. §§ 591, 601. The manner in which such a surrender must be made is prescribed by section 592 of the Code. The sureties must take the defendant to the sheriff, and require him, in writing, to take the defendant into his custody. They must at the same time deliver to the sheriff a certified copy of the undertaking, whereupon it is made the duty of the latter to "detain the defendant in his custody thereupon, as upon the original mandate," and to acknowledge the surrender by a certificate in writing.

The original mandate in the case at bar was the order of arrest, so that the effect of any surrender which might be allowed here would be that the sheriff must resume the custody of the defendant Harris because of the original order of arrest, and his authority for so doing would rest upon the demand of the sureties, and the papers required to be delivered to him at the time of the surrender. Section 110 of the Code provides that:

"A person arrested by virtue of an order of arrest, in an action or special proceeding brought in a court of record, or of an execution issued upon a judgment rendered in a court of record, or surrendered in exoneration of his bail, must be safely kept in custody in the manner prescribed by law, and, except as otherwise prescribed in the next two sections, at his own expense, until he satisfies the judgment rendered against him, or is discharged according to law."

It may well be that, after the defendant is so surrendered and held by the sheriff, it may become necessary at some time for the plaintiff to issue a new execution against the body of the defendant in order to avoid the loss of his remedy and the discharge of the defendant under section 572 of the Code; but what have the sureties to do with that? They have secured immunity from any liability to the plaintiff by virtue of the surrender of their principal, followed by an order of exoneration by the court. They are no longer concerned about the fate of their former principal, but have become strangers to the entire matter; and whether the defendant is thereafter to be held or discharged is a matter in which he, and he alone, is interested. Furthermore, the plaintiff cannot in any case be compelled to issue the second execution. He has the right to refrain from so doing, and to submit to the only penalty which the law prescribes in such a case, namely, the discharge of the defendant if the latter moves for such relief.

We think it is quite clear that the court below had no power to make the direction which it did. As the subsequent provisions of the order are to a large extent dependent upon the direction to issue the execution, they must fall with the latter. The direction which confers upon the respondent the privilege of serving an amended or supplemental answer is also open to the serious objection that it gives leave to plead matters not yet in existence, and which may never occur. The court may not entertain an application for leave to serve such a pleading on speculative grounds, nor unless the facts to be pleaded are existent, and certainly cannot give, as was done here, a

general authority to a defendant to serve an amended or supplemental pleading setting up any new matters that might thereafter occur in the action up to the time when he may see fit to avail himself of the privilege. With respect to the portion of the order which opens the default of the respondent, and sets aside the judgment recovered against him, we are of the opinion that it is so connected with the other portions of the order, which we have found to be erroneous, that we do not think we should sustain it while reversing the objectionable provisions. We are mindful of the fact that we cannot review matters which rested in the discretion of the court below, and that whether a default should be opened is a matter with respect to which a very broad discretion exists in the court of original jurisdiction; but we feel that in this case justice requires that we should not undertake to separate interdependent provisions of an order where some are plainly erroneous, and simply modify the order by eliminating those which are objectionable. The opening of the default was one of several steps in a comprehensive scheme for full relief to the respondent on one motion; and it is quite impossible to determine how far the court may have been influenced in its action, and in prescribing the terms upon which such relief should be granted, by the other directions which were given, but which we have found to be tainted with error. Furthermore, the motion in which the order appealed from was granted has been made in two actions,—the original action, and the one which was brought against the sureties. While this practice is quite objectionable, we do not propose to discuss the question further than to say that as the only possible ground for moving in the first action was to give support to the direction that a new execution issue, and as we are unable to sustain the order in that regard, the motion cannot be entertained in its present form. The respondent should, however, have leave to renew his motion for the opening of the default, and for an extension of time within which to surrender his principal. In granting such leave, while we do not wish to interfere with the prerogative of the court below to exercise its own discretion in the matter, we think it not improper to suggest that the consent which the respondent gave in open court that the judgment against him should stand, and the agreement which he thereafter made with the plaintiff, in consideration of the withdrawal of the levy upon his property, to pay the judgment by installments, which agreement has been practically executed, are, at least, deserving of weighty consideration. Doubtless the respondent has been aggrieved, but his situation seems largely the result of what would appear, upon the facts before us, to have been the negligence of his former attorney in not advising him, as soon as the action on the undertaking was brought, that he had a right to surrender his principal, and obtain an order of exoneration.

The claim that the plaintiff's attorney in the original action unlawfully interfered with the taking by the sheriff of the defendant Harris on the body execution, on which the general term of the court below laid considerable stress in sustaining the order, was not pleaded by the respondent; nor, strange to say, does the order ap-

pealed from give him leave so to do. Broad as was the authority to amend which was attempted to be conferred, it fell short of sanctioning the interposition of this defense.

It follows from what has been said that the order must be reversed, and the motion denied, with costs to the appellant, but with leave to the respondent to renew the motion to open the default, and for an extension of time within which to surrender his principal on payment of such costs. All concur.